<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| GILMAN LICENSING ASSOCIATES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> STYLOS Y SHOWS SA DE DV *et al.*, <br><br> Defendants. | HONORABLE KAREN M. WILLIAMS <br><br> Civil Action <br> No. 25-15498 (KMW-EAP) <br><br> **OPINION** |

**Appearances:**

**Jake Etienne, Esq.**
Heskin & Proper PLLC
641 Lexington Ave, 14th Floor
New York, NY 10022

*Counsel for Plaintiff Gilman Licensing Associates, LLC*

**Aytan Yehoshua Bellin, Esq.**
**Briana Sheridan, Esq. (Pro Hac Vice)**
**Rachel Penski Fissell, Esq. (Pro Hac Vice)**
Katsky Korins LLP
605 Third Ave,
New York, NY 10158

*Counsel for Defendants Stylos y Shows SA de CV, Arctic Fashions, S. de R.L. de C.V. d/b/a/ Reebok Mexico, Jose Tawil Beer, and Moises Tawil Beer*

**WILLIAMS, District Judge:**

## I.     INTRODUCTION

Plaintiff Gilman Licensing Associations, LLC, ("Plaintiff") brings this breach of contract action against Defendants Stylos y Shows SA de CV ("Stylos y Shows"), Arctic Fashions, S. de R.L. de C.V. d/b/a Reebok Mexico ("Arctic Fashions), Jose Tawil Beer ("Tawil Beer"), and Moises Tawil Saba ("Tawil Saba") (collectively "Defendants"). On September 12, 2025, Defendants removed this action to this Court pursuant to diversity jurisdiction, contending that removal was

timely because none of the Defendants had been properly served. This matter comes before the Court on Plaintiff's Motion to Remand (ECF No. 9) for untimely removal, or, alternatively, Plaintiff's Motion for Alternative Service (ECF No. 11). Defendants opposed both motions (ECF No. 14), and Plaintiff replied (ECF No. 15). Defendants requested leave to file a Sur-Reply (ECF No. 20), which the Court granted. (ECF No. 21). For the reasons articulated below, Plaintiff's Motion to Remand (ECF No. 9) is **GRANTED** and Plaintiff's Motion for Alternative Service (ECF No. 11) is **DENIED AS MOOT**.

## II.    BACKGROUND

For the purposes of the instant motion, the procedural history is paramount. On April 18, 2024, Plaintiff, a citizen of New Jersey, filed the instant suit in the New Jersey Superior Court. (*See* ECF No. 9-3 at p. 21).[1] All Defendants are citizens of Mexico. In order to comply with the Hague Service Convention ("Convention"), Plaintiff submitted all required documentation, including translations, triplicate copies, and mandatory forms, to the Mexican Central Authority for service to Defendants in Mexico and received confirmation of receipt. (ECF No. 9-1 at pp. 4-5; ECF No. 9-4 at p. 74, ¶ 18).[2]

On May 28, 2024, when the Mexican Central Authority had not yet effectuated service, Plaintiff requested, and the Superior Court granted, an extension of time to serve Defendants. (ECF No. 9-1 at p. 3). On December 19, 2024, when the Mexican Central Authority still had not effectuated service, Plaintiff requested, and the Superior Court granted, a second extension of time to serve Defendants. (*Id.*).

---

[1] New Jersey Superior Court Civil Information Sheet (ECF No. 9-3 at p. 21)
[2] Pl.'s Motion to Remand Br. (ECF No. 9-1 at pp. 4-5); Pl's Motion to New Jersey Superior Court Requesting Leave to Effectuate Substitute Service (ECF No. 9-4 at p. 71-77, ¶ 18).

2

On April 24, 2025, almost a year later, when the Mexican Central Authority had neither effectuated service, nor responded to any of Plaintiff's follow up inquiries, Plaintiff filed a Motion Requesting Leave to Effectuate Substituted Service on Defendants. (*Id*; ECF No. 9-4 at p. 71-77). Plaintiff's Motion included a proposed order requiring physical service upon Defendants Tawil Saba and Tawil Beer (collectively "Individual Defendants") at their residences in Sunny Isles, Florida as well as mailing the Summons and Complaint to all Defendants in Mexico with confirmation receipts provided to the Court. (*See* ECF No. 9-4 at p. 79).[3] Plaintiff's Motion explained, *inter alia*, that the Individual Defendants owned residences in Sunny Isles, Florida that were "located in a private community with an attendant and/or representative physically present at the entrance at all times." (ECF No. 9-4 at p. 72, ¶¶ 4-7).

The Motion also stated:

> 33.    In the event Defendant Jose Tawil Beer and/or Defendant Moises Tawil Saba are not present at the time of service, or the serving agent is not permitted to fully enter the premises, the serving agent will effectuate service on a representative of the building, including the front desk receptionist or similar representative.
>
> 34.    As stated in the Complaint filed in this action, Defendant Jose Tawil Beer and Defendant Moises Tawil Saba are the managing officers and directors of the Corporate Defendants. Therefore, service upon Defendant Jose Tawil Beer or Defendant Moises Tawil Saba shall constitute service upon all Defendants.

(ECF No. 9-4 at p. 75, ¶ 33-34).

On May 23, 2025, the Superior Court granted Plaintiff's request, adopting Plaintiff's proposed Order for Substitute Service in its entirety without alteration, which ordered Plaintiff to serve Defendants by:

---

[3] Plaintiff's Proposed Order to Effectuate Substitute Service filed in New Jersey Superior Court (ECF No. 9-4 at p. 79).

(a) physical service upon Defendants Jose Tawil Beer and/or Moises Tawil Saba at their Sunny Isles Beach Florida residences; and

(b) physically mailing copies of the Complaint and Summons, along with translated copies of each to Defendants' known addresses in Mexico, with delivery confirmation to be provided to the Court.

(*Compare* ECF No. 9-4 at p. 79 *with* ECF No. 9-4 at p. 83).[4]

Plaintiff mailed the required papers to Defendants in Mexico via Federal Express. On June 9, 2025, the papers were delivered to Defendant Stylos y Shows at its address in Mexico, and a confirmation signature was obtained. (ECF No. 9-4 at p. 105).[5] The same day, the papers were delivered to Defendant Arctic Fashions at its address in Mexico; although the confirmation receipt does not display a signature, it states: "Signed for by: A. ALDAIR URSUA." (ECF No. 9-4 at p. 107).[6] On June 18, 2025, the papers were delivered to Defendant Tawil Saba in Mexico, and a confirmation signature was obtained. (ECF No. 9-4 at p. 98).[7] Defendant Tawil Beer refused delivery of the papers sent to him in Mexico and the papers were returned. (ECF No. 9-4 at pp. 100-03).[8] Plaintiff also mailed the papers via Federal Express to the Individual Defendants at their Sunny Isles, Florida residences, where both deliveries were completed on June 6, 2025, and confirmation signatures were obtained. (ECF No. 9-4 at pp. 85-86).

Plaintiff arranged to have a process server ("Server") physically serve the Individual Defendants at their Florida residences. (ECF No. 9-4 at pp. 92-93).[9] The Server attempted to serve the Individual Defendants on June 12, 2025, June 17, 2025, and June 18, 2025. (*Id.*). On June 17,

---

[4] New Jersey Superior Court Order Granting Plaintiff's Leave to Effectuate Substitute Service (ECF No. 9-4 at p. 83).
[5] Federal Express Receipt Confirmation for Defendant Stylos y Show (ECF No. 9-4 at p. 105).
[6] Federal Express Receipt Confirmation for Defendant Arctic Fashions (ECF No. 9-4 at p. 107).
[7] Federal Express Receipt Confirmation for Defendant Tawil Saba (ECF No. 9-4 at p. 98).
[8] Federal Express Return of Package Notice (ECF No. 9-4 at pp. 100-03).
[9] Verified Return of Service as to Defendant Tawil Saba (ECF No. 9-4 at p. 92); Verified Return Service as to Defendant Tawil Moises (ECF No. 9-4 at p. 93).

4

2025, the Server noted that he spoke with the building's security personnel who confirmed that the Individual Defendants owned the condos and advised that the Individual Defendants were family and that the building units were their vacation homes. (*Id.*). On June 18, 2025, when the Server could not deliver the papers to the Individual Defendants personally, he left both sets of papers with the building's front desk agent. (*Id.*).

On June 27, 2025, Plaintiff filed an affidavit of service with the court. (ECF No. 9-1 at p. 3). On September 8, 2025, Plaintiff filed a request for an entry of default. (*Id.*) On September 11, 2025, the Superior Court Clerk entered default in the case. (*Id.*). On September 12, 2025, Defendants removed the case to this Court based on diversity asserting that removal was timely because none of the Defendants had been properly served. (ECF No. 1 at ¶ 2).[10] The removing party, Defendant Tawil Beer, obtained consent from all other Defendants, who also preserved their arguments regarding their own service. (ECF No. 1 at ¶¶ 7-9).

On October 9, 2025, Plaintiff filed this Motion to Remand (ECF No. 9). On October 10, 2025, Plaintiff filed a Motion for Alternative Service (ECF No. 11). On November 3, 2025, Defendants opposed both of Plaintiff's motions (ECF No. 14). On November 12, 2025, Plaintiff replied. (ECF No. 16). On November 25, 2025, Defendants filed a request to submit a Sur-Reply to respond to a newly raised argument in Plaintiff's Reply. (ECF No. 20). The Court, noting no opposition to Defendants' request, granted Defendants leave to file a Sur-Reply. (ECF No. 21).

## III.   STANDARD OF REVIEW

**Motion to Remand**

Pursuant to 28 U.S.C. § 1441(a), "defendants may generally remove civil actions from state court to federal district court so long as the district court would have had subject-matter jurisdiction

---

[10] Notice of Removal (ECF No. 1 at ¶ 2).

had the case been originally filed before it." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014). An action must be removed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C.A. § 1446(b)(1).

After a defendant files a notice of removal, a plaintiff may move to remand the matter to state court. *See* 28 U.S.C. § 1447. A motion to remand on the basis of a procedural defect must be filed within thirty days of the filing of the notice of removal, 28 U.S.C. § 1447(c), whereas "a motion to remand based on lack of subject matter jurisdiction may be made at any time before final judgment." *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1212 (3d Cir. 1991) (citing 28 U.S.C. 1447(c)). Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)).

## IV.    DISCUSSION

Plaintiff argues that removal was untimely because Defendants were properly served pursuant to the New Jersey Superior Court Order ("Superior Court Order") on or before June 18, 2025, yet Defendants waited almost three months until September 12, 2025, to remove the case to federal court. (Pl.'s Br. at p. 1; Pl.'s Reply at pp. 3-4). Plaintiff contends that after diligently attempting service through Mexico's Central Authority under the Convention for more than a year, it sought, and was granted, a Court Order that permitted substitute service due to delays caused by labor unrest and upheaval in the Mexican judiciary. (Pl.'s Br. at pp. 2-4; Pl.'s Reply at p. 4). Plaintiff maintains that the Superior Court validly authorized substitute service under New Jersey Rule 4:4-4(b)(3), permitting service through Federal Express deliveries in Mexico and physical delivery upon the Individual Defendants at their Florida residences. (Pl's Br. at p. 3-4). Plaintiff

6

further argues that Defendants had actual notice of the suit, intentionally evaded service, and improperly waited until after entries of default before removing the action. (*Id.* at pp. 1-2, 14).

Plaintiff argues, in the alternative, that if the Court finds any defect in service, it should authorize alternative service under Rule 4(f)(3) through counsel and/or by email because Mexico's Central Authority has effectively failed to accomplish service despite Plaintiff's extensive efforts. (*Id.* at pp. 10-14). Plaintiff additionally, and for the first time, argues in its Reply that removal was independently barred because it occurred more than one year after commencement of the action. (Pl's Reply at pp. 1, 3, 8).

Defendants argue that removal was timely because no defendant was ever properly served, meaning that the thirty (30) day removal clock under 28 U.S.C. § 1446(b) never began to run. (Notice of Removal at pp. 2-4; Defs' Opp. at p. 1). Defendants contend that because Mexico objected to Article 10 of the Convention, which governs service through postal channels, Plaintiff's Federal Express mailings into Mexico were invalid as a matter of law. (Defs' Opp. at pp. 1-2). Defendants maintain that the Superior Court lacked authority to authorize substitute service methods inconsistent with the Convention, making the May 23, 2025, substitute service order a "legal nullity." (*Id.*). Defendants further argue that service at the Florida condominium properties was ineffective because the properties were merely vacation homes, not Defendants' usual places of abode, and because delivery to front desk attendants did not satisfy New Jersey service requirements or due process. (*Id.* at pp. 2-3).

In opposing alternative service, Defendants argue that email service is likewise barred by the Convention because of Mexico's objection to Article 10 postal channels. (*Id.* at p. 17). Additionally, Defendants argue that service by email "would not comport with due process" because Plaintiff has not shown evidence that the proposed email addresses are currently valid and

7

actively used by Defendants. (*Id.* at p. 18). Defendants also argue that service upon counsel "would be fundamentally unfair and inconsistent with due process principles" because counsel was retained solely for the purpose of contesting service. (*Id.* at pp. 19-20). Finally, Defendants argue in their Sur-Reply that Plaintiff's one-year removal argument fails because the one-year limitation in § 1446(c)(1) applies only to removals under § 1446(b)(3), whereas this case was removable from the outset based on the original complaint. (Defs.' Sur-Reply at pp. 1-3).

In the context of a motion to remand, defendants, as the removing party, "bear the burden of establishing removal jurisdiction and compliance with all pertinent procedural requirements." *Blount v. TD Bank, N.A.*, No. 20-18805, 2021 WL 2651760, at *2 (D.N.J. June 28, 2021) (quoting *Aetna Inc. v. Insys Therapeutics, Inc.*, 284 F. Supp. 3d 582, 584 (E.D. Pa. 2018)). When the validity of service is at issue, even on a motion to remand, "'proper service of a defendant is not presumed,' and the party asserting the validity of service bears the burden of proof on that issue." *Id.*; *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 478, 488 (3d Cir. 1993).

Thus, in this case, Plaintiff, as the party asserting the validity of service, bears the burden of establishing such. Plaintiff has sufficiently carried that burden.

### A.    Federal Express Service to Mexico

The Convention is a multilateral treaty that was established to "provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). "By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." *Id.* at 699. This means that when service is being effectuated

8

abroad, if the sending state's service laws authorize methods of service that are impermissible under the Convention, the terms of the Convention control.

Under the Convention, signatory countries are required to establish a central authority to receive requests for service and must "serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law." *Id.* (citing 20 U.S.T. 362, T.I.A.S. 6638, Art. 5). Once the central authority receives a service request it must either promptly inform the applicant if the request does not comply with the provisions of the Convention, or effectuate service of the documents upon the defendant(s) and provide the applicant with a certificate confirming either that service was proper or that service was not proper. 20 U.S.T. 362 T.I.A.S. 6638, Arts. 5-7.

Article 10 of the Convention "encompasses service by mail." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 284 (2017). Article 10 does not "affirmatively authorize[] service by mail," but permits such service if "the receiving state has not objected to service by mail. *Id.* As such, if a receiving state *has* objected to Article 10 of the Convention, then service by mail is *not* permissible under the Convention and any such attempt would be deemed improper. *See Schlunk*, 486 U.S. at 699.

In this case, Plaintiff initially attempted to serve Defendants in Mexico in compliance with the Convention and, through no fault of its own, was unable to effectuate service for almost a year. As such, the Superior Court ordered substituted service pursuant to Rule 4:4-4(b)(3), requiring service, in part, by mail to Mexico with a return receipt provided to the Court. Plaintiff then mailed all Defendants the papers to Mexico via Federal Express. Mexico has objected to Article 10 of the Convention.

9

Plaintiff's argument that mail service was proper because it complied with the Superior Court Order is unpersuasive. The Superior Court cannot order a method of service to Mexico that is impermissible under the Convention. *Schlunk*, 486 U.S. 694 at 698. Because Mexico has explicitly objected to service via mail, service cannot be considered proper when the papers were mailed abroad to Mexico, even when done so pursuant to a state court's order. *Water Splash*, 581 U.S. 271 at 284.

Accordingly, none of the Defendants were properly served by the Federal Express mailings to Mexico.

## B. "Physical Service" to Individuals in Florida

Although the Court finds that service by mail to Mexico was invalid because it violated the Convention, the fact that such service was authorized by the Superior Court's Order does not render the entire Order a "legal nullity," as Defendants contend. The limited case law addressing partially invalid court orders suggests that courts conduct a severability analysis and, where an invalid provision can be excised without affecting the remainder of the order, the court will only strike the offending provision. *See Nasdaq Stock Mkt. LLC v. Sec. & Exch. Comm'n*, 38 F.4th 1126, 1145 (D.C. Cir. 2022) (vacating only the invalid provisions of an order while leaving the remaining provisions in tact); *DiCesare-Engler Prods., Inc. v. Mainman Ltd.*, 421 F. Supp. 116, 118 (W.D. Pa. 1976) (upholding the validity of service on one party while deeming service on another party invalid); *Farmlands Partners Inc. v. Fortunae*, No. 18-CV-02351-KLM, 2019 WL 2436064, at *1 (D. Colo. June 11, 2019) (reviewing each component of the orders at issue separately and invalidating only the portions that were legally deficient). Accordingly, although the portion of the Superior Court Order authorizing service by mail to Mexico could not result in proper service, the

10

Court must separately consider whether the portion authorizing physical service upon the Individual Defendants in Florida resulted in proper service.

The Court first notes that since service to Florida is domestic, the provisions of the Convention do not apply. Therefore, the Court looks to New Jersey law to determine whether the Florida service was effective. *DCM Grp. Inc. v. Raina*, WL 3588076, at *2 (D.N.J. Aug. 19, 2022).

New Jersey Rule 4:4-4(b)(3) states:

> If service can be made by any of the modes provided by this rule, no court order shall be necessary. If service cannot be made by any of the modes provided by this rule, any defendant may be served as provided by court order, consistent with due process of law.

N.J. Ct. R. R. 4:4-4(b)(3). Therefore, when a plaintiff cannot serve a defendant in a manner enumerated by Rule 4:4-4, a court may order any method of service as long as it is "consistent with due process of law." *Id.* "The obvious intent of [the Rule] was to provide for service in those cases where it might not otherwise be effected." *Houie by & through Houie v. Allen*, 192 N.J. Super. 517, 520 (App. Div. 1984).

A service method is "consistent with due process" under Rule 4:4-4 when it comports with the standard articulated by the U.S. Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.. DeFazio v. Wright*, 229 F. Supp. 111, 115 (D.N.J. 1964). Therefore, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950). Accordingly, any notice must "reasonably convey the required information" and the defendant must be afforded "reasonable time...to make their appearance." *Id.*

However, this does not mean that substituted service must *guarantee* that the defendant will receive the notice. The New Jersey Supreme Court held such in *Feuchtbaum v. Constantini*

11

when it stated that under some circumstances "substituted service may be made even though it is far from certain that the defendant will in fact receive notice in the action." 59 N.J. 167, 170 (1971). The *Feutchbaum* court applied a balancing test that weighed "plaintiff's need, the public interest, the reasonableness of plaintiff's efforts under all the circumstances to inform the defendant, and the availability of other safeguards for the defendant's interests." *Id.*

A plaintiff's need is "evident enough" when they have been allegedly injured and the enumerated sources of service cannot be reasonably achieved. *Id.* Public interest requires a showing that a broader societal interest is served by allowing the plaintiff to prosecute the claim. *Houie* 192 N.J. Super at 522. Public interest is served "in allowing plaintiff to prosecute his claim…where…defendant is either deliberately *or inadvertently* evading service and plaintiff is unlikely otherwise to obtain compensation for injuries sustained as a result of defendant's alleged torts." *Id.* (emphasis added).

Under the reasonableness of notice prong, the chosen service method must be one that a person genuinely seeking to inform the defendant of the action would reasonably adopt and must be reasonably certain to inform the defendant. *Id.* However, where ideal notice isn't feasible, the substitute service method must not be substantially less likely to provide notice than other alternatives. *Id.* As to fairness, the New Jersey Supreme Court explained that, assuming the defendant is aware of their involvement in the alleged action, fairness mandates that substitute service comports with due process when "it is the defendant's own behavior which, so far as we know, will deprive him of notice of the suit if it fails to reach him." *Feuchtbaum,* 59 N.J. 167 at 177. As such, substitute service satisfies the fairness prong where any failure of notice would result from the defendant's own conduct rather than from the inadequacy or unreliability of the method of substituted service employed. Additionally, courts focus on whether the proposed method

12

includes safeguards that make it reasonably likely that the defendant will receive notice of the action and an opportunity to protect their interests. *Houie* 192 N.J. Super at 522.

### 1.      Physical Service on The Individual Defendants in Florida

In this case, the Superior Court Order required "physical service" upon the Individual Defendants at their Florida residences. Defendants contend that "it is not clear what the State Court meant by 'physical service.'" (ECF No. 14 at p. 9). As such, Defendants apply Rule 4:4-4(a)(1), which outlines the requirements for personal service. Rule 4:4-4(a)(1) mandates that when the papers are not personally delivered to the individual defendant, they must be delivered to a competent member of the individual's "dwelling place or usual place of abode" who is at least fourteen (14) years old and "then residing therein." N.J. Ct. R. R. 4:4-4(a)(1). Defendants argue that leaving the papers with a door attendant of a vacation home does not satisfy the requirements for personal service under Rule 4:4-4(a)(1).

However, the Court notes that service was not rendered under Rule 4:4-4(a)(1). It was rendered under Rule 4:4-4(b)(3), which authorizes a court to fashion unique substituted service options when other service methods, including Rule 4:4-4(a)(1), are not feasible. Nothing in Rule 4:4-4(b)(3) mandates the court's order comply with any portion of the enumerated service methods. Instead, the only requirement imposed upon the court is that the service method be "consistent with due process of law."

The Court does not read the Superior Court Order's requirement for "physical service" in isolation, but reads it, as the Superior Court did, in conjunction with the Motion papers that Plaintiff submitted when it requested leave for substitute service. The Motion papers (ECF No. 9-4 at p. 71-77), explained that all Defendants were citizens of Mexico and that the Individual Defendants were "residing in Mexico" but that they owned "residences" in Florida where an

13

"attendant and/or representative physically present at the entrance at all times." (ECF No. 9-4 at p. 72, ¶¶ 1-7). The papers detailed Plaintiff's efforts to effectuate service through the Mexican Central Authority as well as other means, including hiring a private investigator and attempting to have the Individual Defendants served personally in Boston. (*Id.* at ¶¶ 17-30).  Plaintiffs then requested the Superior Court grant leave for substitute service, specifically requesting that the court permit it to serve the Individual Defendants "at their Florida Residences" and that "[i]n the event Defendant Jose Tawil Beer and/or Defendant Moises Tawil Saba are not present at the time of service, or the serving agent is not permitted to fully enter the premises, the serving agent will effectuate service on a representative of the building including the front desk receptionist or similar representative." (*Id.* at ¶¶ 31-33).

The Superior Court was confronted with the procedural history, Plaintiff's representations regarding its efforts, information surrounding the current issues with service through the Mexican Central Authority, and the Plaintiff's specific requests regarding the proposed methods it would employ to effectuate substitute service. With more than a year's worth of context, the Superior Court granted Plaintiff's request in full, adopting its proposed order without alteration. Thus, when the Superior Court ordered "physical service" upon the Individual Defendants, it was not unclear what "physical service" meant. And when the Superior Court ordered physical service, it did not do so with the requirement that Plaintiff comply with the provisions set forth under Rule 4:4-4(a)(1). Accordingly, the Court declines to adopt Defendants' contention that Plaintiff did not comply with the Superior Court Order because service did not comply with Rule 4:4-4(a)(1).

As such, the Court now applies the *Feuchtbaum* four factor test to determine if service comported with due process.

Plaintiff's need is clear. For more than a year, the Mexican Central Authority neither effectuated service on any Defendant nor responded to Plaintiff's inquiries regarding the status of service. Under those circumstances, further reliance on the Mexican Central Authority offered Plaintiff no realistic prospect of timely service.

The public interest is served by granting substitute service to a plaintiff who, by no fault of its own, has been unsuccessful in achieving international service despite good-faith efforts to do so. The Mexican Central Authority's inability to effectuate service has created the type of service impasse that *Houie* recognized could justify substitute service. While Defendants do not bear responsibility for the Mexican Central Authority's failure to effectuate service, neither the public interest nor the interests of the parties would be served by bringing this action to a standstill as the result of persistent delays in the international service process that are beyond the control of either side and have frustrated service despite Plaintiff's diligent efforts to comply with the Convention.

Next, the Court turns to whether the method authorized by the Superior Court was reasonably calculated to provide notice. In light of the facts presented, physical service at the Individual Defendant's Florida residences was reasonably calculated to provide notice of this action. The record demonstrates that the Individual Defendants were not faceless or unknown individuals to the building staff. Rather, the staff knew who the Individual Defendants were, knew that they owned units in the building, knew personal details such as their family ties, and informed the Server that the residences were the Individual Defendants' vacation homes. These facts support the inference that the building staff were not merely strangers entrusted with the papers, but individuals with a sufficient relationship to the Individual Defendants and their residences to make it reasonably likely that communications delivered to them would be relayed to them.

15

Plaintiff further contends, and Defendants do not dispute, that the Individual Defendants maintain substantial ties to Florida, including ownership interests in Florida businesses, Florida driver's licenses, and multiple luxury vehicles registered to the addresses of the Florida residences. These ongoing connections to Florida reinforce the conclusion that the residences were not random or transitory locations, but places with which the Individual Defendants maintained a continuing relationship, making it reasonably likely that papers delivered there would come to their attention. Under these circumstances, a person genuinely seeking to provide notice would reasonably conclude that delivering the papers to the building staff at the Individual Defendants' Florida residences, who accepted them in the ordinary course of his employment, was likely to result in the papers reaching Defendants.

Further, service at the Florida residences was not substantially less likely to provide notice than any feasible alternative available. Plaintiff had already spent more than a year attempting service through Mexico's Central Authority without success, leaving few practical alternatives more likely to apprise the Individual Defendants of the action. Accordingly, even if service at the Florida residences was not the ideal means of notice, it was reasonably calculated to provide notice and was not substantially less likely to apprise the Individual Defendants of the action than any other feasible alternative service method.

As to fairness, the substitute service authorized by the Superior Court incorporated safeguards designed to increase the likelihood that notice would reach the Individual Defendants and afford them an opportunity to respond. The papers were delivered to personnel who accepted them in the course of their employment duties and who were familiar with Individual Defendants, knew of their connection to the residences, and were capable of identifying them. Under these circumstances, any failure of notice would not be attributable to an inherently unreliable service

16

method, but to factors unrelated to the adequacy of the method ordered by the Superior Court. Thus, to the extent notice did not reach Defendants, the failure would not stem from any deficiency in the substitute service. See *Feuchtbaum*, 280 A.2d at 166. Therefore, the Court finds that the substitute service authorized by the Superior Court comported with due process and satisfied the fairness requirement.

Accordingly, all four *Feuchtbaum* factors weigh in favor of finding that the substitute service authorized by the Superior Court comported with due process. Therefore, the Court concludes that service upon the Individual Defendants at their Florida residences was valid and effectuated as of June 18, 2025.

### 2.    Service on the Corporate Defendants through the Individual Defendants

The Court next considers whether service upon the Individual Defendants constituted proper service upon Defendants Stylos y Shows and Artic Fashions (collectively "Corporate Defendants"). Under New Jersey Rule 4:4-4(a)(6), a corporation may be served by serving "any officer, director, trustee or managing or general agent" in the manner prescribed for individual service. N.J. Ct. R. 4:4-4(a)(6). Thus, a corporation has been properly served when an officer or director of the corporation has been properly served.

In determining whether service upon the Individual Defendants also constituted service upon the Corporate Defendants, the Court reads the Superior Court Order in conjunction with the motion papers that formed the basis for the requested relief as it did *supra* when determining the meaning of "physical service." In seeking leave for substitute service, Plaintiff expressly represented that the Individual Defendants were the managing officers and directors of the Corporate Defendants and that service upon either individual would therefore constitute service upon all Defendants. The Superior Court subsequently granted Plaintiff's request in full and

17

adopted the proposed order without modification. Thus, when the Superior Court authorized substitute service upon the Individual Defendants, it did so against the backdrop of Plaintiff's representation that those individuals occupied positions through which service upon the Corporate Defendants could also be accomplished.

Defendants do not dispute that the Individual Defendants are managing officers and directors of the Corporate Defendants. Having concluded that substitute service upon the Individual Defendants was valid and effective, and because service upon a corporation may be accomplished through service upon an officer or director pursuant to Rule 4:4-4(a)(6), the Court likewise concludes that service upon the Individual Defendants constituted proper service upon the Corporate Defendants as of June 18, 2025.

Accordingly, the Court concludes that service upon all Defendants was effectuated no later than June 18, 2025. Because Defendants did not file their Notice of Removal until September 12, 2025, well beyond the thirty (30) day period prescribed by 28 U.S.C. § 1446(b)(1), the removal was untimely. Therefore, this matter must be **REMANDED** to the Superior Court of New Jersey.

## V. CONCLUSION

For all of the reasons set forth above, Plaintiff's Motion to Remand (ECF No. 9) is **GRANTED** and its Motion for Alternative Service (ECF No. 11) is **DENIED AS MOOT**. An order reflecting the same accompanies this Opinion.

Dated: June 2, 2026

KAREN M. WILLIAMS
United States District Judge

18